

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

EMPRESA CUBANA DEL TABACO d/b/a
CUBATABACO,

               Plaintiff,

    -against-

CULBRO CORPORATION and
GENERAL CIGAR CO., INC.,

             Defendants.

------------------------------------X

97 Civ. 8399

<u>OPINION</u>

A P P E A R A N C E S:

      <u>Attorneys for Plaintiff</u>

      RABINOWITZ, BOUDIN, STANDARD,
        KRINSKY & LIEBERMAN, P.C.
      111 Broadway, 11th Floor
      New York, NY  10006
      By:  Michael Krinsky, Esq.
          David B. Goldstein, Esq.

      <u>Attorneys for Defendants</u>

      DLA PIPER US LLP
      1251 Avenue of the Americas
      New York, NY  10020
      By:  Andrew L. Deutsch, Esq.
          Joshua S. Sohn, Esq.

      MORGAN & FINNEGAN, LLP
      3 World Financial Center
      New York, NY  10281
      By:  Harry C. Marcus, Esq.
          Scott Greenberg

**Sweet, D.J.**

Plaintiff Empresa Cubana del Tabaco, d/b/a
Cubatabaco ("Plaintiff" or "Cubatabaco") has moved pursuant
to Rule 60(b)(6), Fed. R. Civ. P., for an order relieving
it from the final judgment in favor of defendants Culbro
Corporation and General Cigar Co., Inc. (collectively,
"Defendants" or "General Cigar") on Cubatabaco's claim of
unfair competition under New York law.  Upon the prior
proceedings and the conclusions set forth below,
Cubatabaco's motion is granted.

## I.  Facts and Prior Proceedings

This is the latest iteration of the dispute
concerning the rights surrounding the famous Cuban cigar,
the COHIBA.  The dispute remains alive and well and
relevant[1] after ten and a half years and the attention of
the courts, agencies, and many able lawyers.

The parties' familiarity with the prior
proceedings and facts underlying this dispute is assumed.
In brief, in January 1997, Cubatabaco, a Cuban company,

---

[1] The United States' ongoing trade embargo against Cuba and the scope of
the embargo's implementing regulations have become central to the
dispute in this case.

1

applied to register "COHIBA" with the United States Patent
and Trademark Office ("PTO") and, at the same time, applied
to the Trademark Trial and Appeals Board ("TTAB") to cancel
General Cigar's two registrations of COHIBA. Later in
1997, General Cigar launched a COHIBA-branded cigar on a
national scale. On November 12, 1997, Cubatabaco brought
an action in this Court for an injunction against General
Cigar's use of the COHIBA mark, as well as for cancellation
of General Cigar's registrations. As provided for in TTAB
Rule 2.117, 37 C.F.R. § 2.117, the TTAB cancellation
proceedings were suspended pending the outcome of the
federal court litigation.

On Cubatabaco's motion for summary judgment, this
Court held that General Cigar had abandoned the rights it
had obtained from its initial registration and use of
COHIBA between 1978 and 1987 because of its non-use of the
mark for a period of more than five years, between 1987 and
1992. After a bench trial, the Court held that Cubatabaco
owned the COHIBA trademark in the United States under the
"well-known" (or "famous") marks doctrine, finding that the
Cuban COHIBA was "well-known" within the meaning of that
doctrine at the time General Cigar used and registered the
mark in 1992. On the basis of this holding, the Court

found for Cubatabaco on its claim of trademark infringement
under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),
enjoined General Cigar's use of COHIBA, and ordered
cancellation of its second registration. Empresa Cubana
Del Tabaco v. Culbro Corp., 70 U.S.P.Q.2d 1650, No. 97 Civ
8399, 2004 WL 602295 (S.D.N.Y. Mar. 26, 2004), rev'd on
other grounds, 399 F.3d 462 (2d Cir. 2005).

This Court also dismissed Cubatabaco's claim
under the New York common law of unfair competition by
misappropriation, holding that Cubatabaco had failed to
prove General Cigar's "bad faith" in selecting the COHIBA
mark.    To establish its claim, Cubatabaco was required to
establish that General Cigar chose the mark in order to
exploit the reputation and goodwill of the Cuban COHIBA.
As Cubatabaco had "presented no credible evidence that
General Cigar believed that they did not own the COHIBA
mark at the time," the claim was dismissed. Id. at 1693-
94. It is this holding that is at issue on the instant
motion.

On appeal, General Cigar contended that the Cuban
Assets Control Regulations, 31 C.F.R. Part 515 (the "CACRs"
or the "Regulations"), barred Cubatabaco's acquisition of

rights in the COHIBA mark through the famous marks
doctrine. The Court of Appeals agreed and reversed this
Court's judgment insofar as it granted relief to Cubatabaco
on its Lanham Act trademark infringement claim. Empresa
Cubana Del Tabaco v. Culbro Corp., 399 F.3d 462, 471-81 (2d
Cir. 2005). At the same time, the Court of Appeals
affirmed this Court's dismissal of Cubatabaco's New York
unfair competition claim. Id. at 485.

On September 20, 2004, after General Cigar raised
the CACRs issue on appeal, Cubatabaco filed an application
with the United States Treasury Department's Office of
Foreign Assets Control ("OFAC") for a specific license
retroactively authorizing this Court's issuance of relief
in favor of Cubatabaco. At the time this motion was filed,
that application was pending.

Cubatabaco's petition to the Court of Appeals for
rehearing and for rehearing en banc was denied on June 1,
2005. The Supreme Court denied Cubatabaco's petition for a
writ of certiorari on June 15, 2006. Empresa Cubana del
Tabaco v. General Cigar Co., Inc., 527 U.S. 1205 (2006).
Neither the petition for rehearing nor the certiorari

4

petition sought review of the New York law issued raised by
the dismissal of Cubatabaco's New York claim.

The Court of Appeals' mandate, issued on February
8, 2006, decreed that the district court's judgment be
"AFFIRMED IN PART, REVERSED IN PART, and REMANDED in
accordance with the opinion of this Court," which directed
that the case be "remanded for entry of an order dismissing
all remaining claims." See Empresa Cubana, 399 F.3d at
486. The mandate was entered in the district court on
February 23, 2006. Pursuant to the mandate, this Court
entered an order on May 27, 2006, as instructed by the
Court of Appeals, "that all remaining claims in the above-
entitled action are dismissed."

On July 6, 2006, General Cigar moved to dismiss
Cubatabaco's petition to cancel General Cigar's
registrations in the TTAB and to deny Cubatabaco's
application for registration of COHIBA in the PTO. The
motion was heard on September 20, 2006, and denied by this
Court in an order and opinion dated March 14, 2007 (the
"March 14 Order and Opinion"). Empresa Cubana del Tabaco
v. Culbro Corp., 478 F. Supp. 2d 513 (S.D.N.Y. 2007). The
Court concluded that General Cigar's motion was untimely,

in that final judgment had been entered on February 23, 2006, the date of the mandate, or, alternatively, on May 15, 2006, the date of this Court's final order, and that the relief sought by General Cigar was precluded by the Court of Appeals' mandate. In the March 14 Order and Opinion, this Court also concluded that, even if the motion were timely and not precluded by the appellate mandate, since the Court's termination of the TTAB and PTO proceedings had not previously been sought or adjudicated in the federal court action, the TTAB and PTO, not this Court, should decide whether Cubatabaco's petition for cancellation of General Cigar's registration, and Cubatabaco's application for registration of COHIBA (on the basis of its Cuban registration), were precluded by the Court of Appeals' decision. General Cigar, the Court held, should address any arguments of estoppel on the basis of the Second Circuit's decision to the TTAB and the PTO, not the district court. General Cigar appealed the order, and the Court of Appeals affirmed on September 4, 2008. Empresa Cubana del Tabaco v. Culbro Corp., 541 F.3d 476 (2d Cir. 2008).

On December 13, 2007, the New York Court of Appeals issued an opinion in ITC Limited v. Punchgini,

Inc., 880 N.E.2d 852 (N.Y. 2007).  Cubatabaco argues that this subsequent decision by the New York Court of Appeals and the "unusual and extraordinary circumstances of this case, warrant relief from the Court's judgment dismissing Cubatabaco's unfair competition claim under New York law. Pl. Mem. 17.

The instant motion was heard and marked fully submitted on April 2, 2008.

## II. The Grant of Rule 60(b) Relief is an Appropriate Exercise of Discretion

### a.  The Rule 60(b)(6) Standard

Under Rule 60, Fed. R. Civ. P., a court may relieve a party from a final judgment, order, or proceeding for the specific reasons outlined in the rule, as well as, under Rule 60(b)(6), for "any other reason that justifies relief."   The Second Circuit Court of Appeals has held that "subpart (6) is 'properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship.'"   DeWeerth v. Baldinger, 38

7

F.3d 1266, 1272 (2d Cir. 1994) (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)).

Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting Matarese, 801 F.2d at 106). A court's authority to issue relief under the Rule "should be liberally construed when substantial justice will thus be served." Matarese, 801 F.2d at 106.

Although "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)," relief may be granted "where a 'supervening change in governing law calls into serious question the correctness of the court's judgment.'" Scott v. Gardner, 344 F. Supp. 2d 421, 425-26 (S.D.N.Y. 2004) (quoting Sargent v. Columbia Forest Prods., Inc., 75 F.3d 86, 90 (2d Cir. 1996); see Marrero Pichardo, 374 F.3d at 56 (granting relief where reconsideration based on subsequent change in law would prevent "manifest injustice"); Devino v. Duncan, 215 F.

8

Supp. 2d 414, 419 (S.D.N.Y. 2002) (granting relief based on "unique circumstances presented by the intervening decision" and practical, procedural hurdles).

In determining whether an intervening decision of law constitutes "extraordinary circumstances" justifying the exercise of a court's discretionary power under Rule 60(b)(6) "to accomplish justice [and] . . . to do justice in a particular case," courts in this district have looked to several factors. Marrero Pichardo, 374 F.3d at 55 (citation omitted); see Sargent, 75 F.3d at 89, 90 (treating authority to recall as "analogous to the power conferred on district courts by Fed. R. Civ. P. 60(b)" and applying four factors to determine that recall of mandate was appropriate); Scott, 344 F. Supp. 2d at 427 (applying four-factor test in granting relief under Rule 60(b)(6)); Devino, 215 F. Supp. at 418 (applying four-factor Sargent test to grant Rule 60(b) relief). The relevant factors to consider are:

> (1) whether the new law is "beyond any question inconsistent" with the earlier decision; (2) whether the moving party notified the court of a pending case or motion that may alter the decisional law; (3) whether "substantial" time had elapsed between the earlier decision and the pending motion; and (4) whether the equities strongly favor the moving party.

Id. (quoting Sargent, 75 F.3d at 90). In order to
determine who the equities favor, courts have looked to
whether the party seeking relief in a diversity case chose
to bring its state-law claims in a federal forum, or
whether the case was removed to federal court, see Sargent,
75 F.3d at 90; whether the moving party had previously
"made the argument that ultimately prevailed" or whether it
was being raised for the first time on the Rule 60 motion,
see id. at 90; Scott, 344 F. Supp. at 426-27; and whether
the non-moving party would suffer "undue hardship" if the
prior judgment is disturbed. Id. at 424.

## b.   Consideration of the Four Factors Warrants the Exercise of Relief

Under Sargent, the New York Court of Appeals'
holding in ITC must be "beyond any question inconsistent"
with this Court's earlier decision to warrant relief.   75
F.3d at 90; see Scott, 344 F. Supp. 2d at 426 (granting
relief based in part on determination that intervening
"decisions are not consistent with earlier decisions from
this district").

In its order dismissing Plaintiff's misappropriation claim, this Court held, and the Second Circuit Court of Appeals agreed, that dismissal was required "[i]n the absence of a finding of bad faith." Empresa Cubana, 70 U.S.P.Q.2d at 1263-64; Empresa Cubana, 399 F.3d at 485("We find no error in the District Court's bad faith determination and therefore affirm the dismissal of the claim."). In stark contrast, in ITC, the New York Court of Appeals made no mention of any separate and distinct requirement of "bad faith." Defendant correctly notes that the Court was explicit that its opinion merely reaffirms existing state law, making no changes to either the well-known marks doctrine or unfair competition by misappropriation. ITC, 880 N.E.2d at 859. The Court was equally clear in its articulation of the showing necessary to establish a misappropriation claim under New York law, and nowhere in its opinion did the Court make reference to or point to facts that would indicate that a separate showing of bad faith is necessary to prove misappropriation. Id. at 860 (establishing two separate and independent showings necessary to prove misappropriation); see ITC Ltd. v. Punchgini, Inc., 518 F.3d 159, 161 (2d Cir. 2008) (summarizing post-

11

certification requirements for unfair competition claim as deliberate copying and secondary meaning).

Given that both this Court and Second Circuit Court of Appeals made explicit and exclusive use of the bad faith requirement to dismiss Plaintiff's unfair competition claim, the Court of Appeals' silence is "patently inconsistent" with this Court's prior decision.

Neither the second nor third factors weigh heavily for or against relief under Rule 60(b)(6). The second factor is irrelevant since, at the time the issues were being considered by this Court, the parties could not have anticipated that the Second Circuit Court of Appeals would ultimately certify the famous marks issue to the New York Court of Appeals in ITC. General Cigar argues that Cubatabaco could have moved the Second Circuit to certify the question "whether bad faith was a required element of the claim." Def. Mem. 18. However, Cubatabaco's position was that New York law entitled it to prevail on its misappropriation claim, regardless of whether General Cigar believed it had the right to use the mark, and so had no basis to request certification on the issue of bad faith. Cubatabaco is correct that ITC only became relevant to this

12

action when the New York Court of Appeals converted the
Second Circuit's inquiry regarding the famous marks
doctrine into a clarification of misappropriation law.

The third factor, whether "substantial time" has
passed between final judgment and the pending motion, is
one that courts have emphasized in determining whether
relief under Rule 60(b) is appropriate. "In the interest
of securing the finality of litigation, courts are
reluctant to revisit long closed judgments, even in the
face of a change in the controlling law." Kelly v. City of
New York, No. 91 Civ 2567 (JFK), 2001 WL 1132017, at *3
(S.D.N.Y. Sept. 24, 2001). What constitutes "substantial
time" depends on the circumstances in a given case. See,
e.g., Sargent, 75 F.3d at 90 (recalling mandate where
"there was not a substantial lapse of time between
issuance" of mandate and motion); DeWeerth, 38 F.3d at 1275
(holding that interest in the finality of the judgment
"which was more than four years old at the time of that
ruling" outweighed other interests); Kelly, 2001 WL
1132017, at *3 (granting motion for reconsideration where
opinion changing law was "issued barely two months after"
Court's order). Some courts have proven more willing to
grant 60(b)(6) relief, however, where the proceedings

13

remain ongoing. See, e.g., Devino, 214 F. Supp. 2d at 418
(granting relief where change in law affecting timing of
habeas filings occurred before petitioner exhausted state
court remedies).

In Sargent, for example, the Court relied on the
fact that the plaintiff's petition for certiorari was
pending when the intervening state high court decision was
decided, even though the motion for relief was not brought
until the petition was denied. 75 F.3d at 89, 90. The
Court of Appeals contrasted those circumstances with the
circumstances in DeWeerth v. Baldinger, in which the
district court's grant of plaintiff's Rule 60(b)(6) motion
overturned a four-year-old ruling. Id. at 90; DeWeerth, 38
F.3d at 1275.

In DeWeerth, the Second Circuit held that the
district court abused its discretion because it

> inappropriately   disturbed   a   final
> judgment in a case that had been fully
> litigated and was long since closed....
> Erie  simply  does  not  stand  for  the
> proposition   that   a   plaintiff   is
> entitled to reopen a federal court case
> that has been closed for several years
> in  order  to  gain  the  benefit  of  a
> newly-announced  decision  of  a  state
> court.

Id. at 1272.

Here, Cubatabaco has promptly filed this motion
in satisfaction of Rule 60(c)'s "reasonable time"
requirement. In considering whether the interest in
finality precludes the application of extraordinary relief,
the fact that the dispute between Cubatabaco and General
Cigar continues in the TTAB is not without import.
Although the legal issues are distinct, the underlying
dispute regarding ownership of the COHIBA mark is ongoing.
In addition, the New York Court of Appeals' supervening ITC
decision was issued December 13, 2007, less than two years
after the Second Circuit issued its opinion affirming
dismissal of Plaintiff's unfair competition claims.
Although the time that has passed since this Court's
judgment and the supervening decision in ITC is not
insignificant, General Cigar's interest in finality under
the present circumstances does not necessarily preclude the
grant of Rule 60(b)(6).

Finally, the equities weigh heavily in favor of
granting Cubatabaco's motion for relief. Given the
parallels between ITC and the facts in this case, it
appears that the New York Court of Appeals' articulation of

15

the misappropriation standard was intended to protect

parties from just the sort of behavior that Cubatabaco

alleges here. ITC, 880 N.E.2d at 859 (describing

"proposition that for certain kinds of businesses

(particularly cachet goods/services with highly mobile

clienteles), goodwill can, and does, cross state and

national boundary lines."). Indeed, the record here

contains findings of fact that General Cigar deliberately

sought to capitalize on the goodwill of the COHIBA mark in

the United States, and continues to profit from the Cuban

COHIBA's goodwill. Empresa Cubana, 70 U.S.P.Q.2d at 1669-

73, 1685-86.


Other equitable factors also favor Cubatabaco.

As the dispute over the trademark's ownership continues in

the cancellation proceeding, "no undue hardship [will] be

imposed on" General Cigar if relief is granted. Scott, 344

F. Supp. 2d at 424. In addition, Cubatabaco contends that

"made the argument that ultimately prevailed" on its unfair

competition claim in front of this Court. Sargent, 75 F.3d

at 90-91 (denying motion to recall mandate with regard to

separate claim where claim was not made on appeal); Scott,

344 F. Supp.2d at 426; see Pl. Mem. 22. Finally, courts

have also considered whether, in a diversity case, a party

chose to bring its state law claims in a federal forum,
thereby assuming the risk of federal court making the wrong
"prediction" as to state law. See DeWeerth, 38 F.3d at
1273-74. By contrast, here, a foreign enterprise brought
primarily federal treaty and statutory claims, along with a
state law unfair competition by misappropriation claim. In
DeWeerth, no federal claims were implicated, and the
plaintiff, an alien, had complete control of the forum such
that the defendant, a New York citizen, could not have
removed had she been sued in state court. See DeWeerth v.
Baldinger, 658 F. Supp. 688, 690, 694 (S.D.N.Y. 1987); 28
U.S.C. § 1441(b). Here, federal questions were raised
under two treaties and federal statute and state law claims
are before the federal court only pursuant to supplemental
jurisdiction. Nothing in DeWeerth suggests that its
analysis of a state law diversity case controls a federal
question/supplemental jurisdiction case, making the
discussion of the consequences of a plaintiff's choice of
forum in a state law diversity case inapplicable here.

The interests of justice, therefore, justify the
exercise of the court's discretion under the relevant
60(b)(6) authorities.

17

## III. **Under ITC Limited, Cubatabaco Has Established Misappropriation by General Cigar**

In ITC Ltd. V. Punchgini, Inc., 482 F.3d 135 (2d
Cir. 2007), the Second Circuit Court of Appeals issued an
opinion considering the application of the famous marks
doctrine to the New York common law of misappropriation.
The Court agreed with the plaintiff that New York's common
law of unfair competition generally "allows a plaintiff to
sue for unfair competition where a 'property right or a
commercial advantage' has been 'misappropriated.'" Id. at
165 (citation omitted). However, because plaintiff did not
own trademark rights in the U.S. by either registration or
use, its ability to succeed on its claim of
misappropriation necessarily depended on "whether New York
recognizes the famous marks doctrine." Id. In formulating
its certified questions to the New York Court of Appeals,
the Court considered two New York trial court decisions
recognizing the famous marks doctrine, Vaudable v.
Montmartre, Inc., 193 N.Y.S.2d 332 (Sup. Ct. 1959), and
Maison Prunier v. Prunier's Rest. & Café, 288 N.Y.S. 529
(Sup. Ct. 1936). These cases led the Court to characterize
the famous marks doctrine as "an exception to the rule [of

18

territoriality] where the second user was guilty of bad faith." ITC, 482 F.3d at 157. But given that no New York appellate court had directly addressed the issue, the Court found an "absence of authoritative state court interpretations of the [law in question]," justifying certification to the New York Court of Appeals. Id. at 166 (quotation omitted) (alteration in original).

On December 13, 2007, the New York Court of Appeals issued its opinion in ITC Limited v. Punchgini, Inc. The Court responded to the certified questions, holding that while New York did not recognize the "well-known" marks doctrine, a party that owns a foreign mark with reputation and goodwill in the United States nonetheless can prevail under New York's common law of unfair competition by misappropriation. ITC, 880 N.E.2d 852.

The New York Court of Appeals further held that, to prevail on such a claim, a party must prove two elements:

(1) that the defendant "deliberately copied" the mark used by plaintiff, id. at 860, by introducing

19

evidence, for example, that defendant "intentionally selected" a name "because of plaintiff's well-known reputation and good will," id. at 858 (quoting Prunier, 288 N.Y.S. at 531); and

(2) that "consumers of the good or service provided under a certain mark by a defendant in New York must primarily associate the mark with the foreign plaintiff." Id. at 860.

Cubatabaco contends that it is entitled to an order relieving it of this Court's earlier order dismissing Cubatabaco's state law unfair competition claim based on the ITC decision and this Court's findings of fact, after trial, that (a) in September 1992, General Cigar selected COHIBA for a new product in order to exploit the reputation and goodwill of the Cuban COHIBA; and (b) at the time, the relevant consumer market primarily associated the designation COHIBA with the Cuban COHIBA. Empresa Cubana, 70 U.S.P.Q.2d 1650.

General Cigar argues that bad faith is a well-established element of unfair competition claims under New York law, and that ITC represents no change in that regard.

However, as discussed above, by holding that a claim for unfair competition can be made regardless of "whether the business is domestic or foreign," ITC, 880 N.E.2d at 859, without requiring any additional showing for foreign entities, the Court of Appeals articulated a standard different than that used by this Court to dismiss Plaintiff's claim. The New York Court put forward only two elements, appropriation and evidence that the relevant consumer market primarily associates the mark with the foreign product, to establish unfair competition. While the Court of Appeals made no mention of eliminating the "bad faith" requirement, the facts of the case themselves demonstrate that proof of intentional copying, without more, is sufficient to satisfy the first prong of the misappropriation test.

The New York Court of Appeals' recital of the facts in ITC reinforces what is required to establish a misappropriation claim. The Court described defendant's restaurant as offering many of same "signature dishes" as plaintiff's New Delhi restaurant and replicating its "particular design elements." ITC, 880 N.E.2d at 855. The Court also noted a press report quoting one of the defendants describing his restaurant as "quite like"

21

plaintiff's restaurant. Id. However, the Court also notes evidence that the ITC defendants acted on the belief that the foreign party had abandoned its rights to the mark in the United States and that the mark was available for adoption in the United States. Id. at 855-56. Notwithstanding a lack of evidence that defendants acted with a belief that the mark was owned by another entity, the Second Circuit Court of Appeals eventually upheld the District Court's finding that the plaintiff had "adduced sufficient evidence of deliberate copying to satisfy that element of [the misappropriation] claim," based on the New York Court of Appeals' articulation of the requirements for misappropriation. ITC, 518 F.3d at 160.

After trial, this Court made several findings of fact that similarly established that General Cigar "intentionally copied" the COHIBA mark. While rejecting Plaintiff's contention that Defendant acted in bad faith, this Court found that General Cigar launched a super-premium cigar product using the name COHIBA "in part to capitalize on the success of the Cuban COHIBA brand and especially the good ratings and the notoriety that it had received in Cigar Aficionado." Empresa Cubana, 70 U.S.P.Q.2d at 1659. In addition, the record showed that

22

General Cigar's conduct constituted "copying the COHIBA mark and attempting to exploit the reputation of the Cuban COHIBA." Id. at 1688. The Court found that General Cigar attempted "to plagiarize the mark," and engaged in "intentional copying," on account of the Cuban COHIBA's fame in the United States. Id. at 1681-82. General Cigar's statements, the Court found, established that "development of the COHIBA brand was an attempt to somehow capitalize on the success of the Cuban brand." Id. at 1686 (quotation omitted). Notwithstanding this evidence, the Court found that the record did not demonstrate that General Cigar "believed they did not own the COHIBA mark." Id. at 1688. After ITC, whatever additional evidence this Court determined was necessary to establish "bad faith" in the context of the famous marks doctrine is no longer necessary. The evidence in the record, therefore, is more than sufficient to demonstrate that General Cigar deliberately copied the COHIBA mark, as required by ITC.

To prove misappropriation, Cubatabaco must also establish that the "relevant consumer market . . . primarily associates" the COHIBA trademark with the Cuban COHIBA. ITC, 880 N.E.2d at 860. After trial, this Court

found that the Cuban COHIBA had acquired recognition
consistent with "secondary meaning" in the U.S., that is,
it was "uniquely associated" with the Cuban COHIBA, or that
this was its "primary significance." Empresa Cubana, 70
U.S.P.Q.2d at 1677, 1682. Relying on Vaudable, which the
Court of Appeals cited to in ITC, this Court concluded that
the Cuban COHIBA had achieved "a level of fame consistent
with secondary meaning as described in Vaudable." Id. at
1682. Accordingly, Cubatabaco has established the second
and final prong of an unfair competition by
misappropriation claim under New York law and is entitled
to relief.

## III. The CACRs and General Cigar's Registration of the COHIBA Mark Do Not Bar 60(b)6 Relief

Finally, General Cigar opposes Cubatabaco's Rule
60(b)(6) motion on the grounds that the CACRs and General
Cigar's registration bar relief. For the reasons below,
Defendant's arguments are rejected.

### a. The CACRs Do Not Bar Relief

On appeal, the Second Circuit Court of Appeals
construed the CACRs to prevent Cubatabaco from acquiring a

trademark in the United States under the well-known marks

doctrine. Empresa Cubana, 399 F.3d at 471-77. The CACRs

prohibit unlicensed "transfers" of "property," 31 C.F.R. §§

515.201, 515.310, defined to include the acquisition of

"trademarks." 31 C.F.R. § 515.311. The Court held that

acquisition of a trademark is, under the Regulations, a

"transfer" of "property" to a Cuban national, and the only

such acquisitions authorized by the CACRs are by

registration. Id. at 470-71. The Court's position on the

applicability of the Regulations to Cubatabaco's trademark

infringement claims was consistent with the position of the

United States, developed with the participation of the

United States Treasury Department, which promulgates and

administers the CACRs.


Cubatabaco argued in the alternative that it was

entitled to relief under Section 43(a), even if it could

not own the U.S. trademark, "on the theory that General

Cigar's use of the COHIBA mark in the United States causes

consumer confusion." Id. at 477. Cubatabaco, then, would

reserve exclusive use of the COHIBA mark, save for non-

confusing use by others. The Second Circuit responded that

relief to Cubatabaco under its alternative Section 43(a)

claim would be, for all intents and purposes, the same as

Cubatabaco acquiring the COHIBA trademark, and therefore was also barred by the CACRs. Id. at 476-79. The Court determined that the Regulations did not permit Cubatabaco to "achieve the same transfer via a route that is one step more circuitous than the path rejected above," namely, the transfer of the trademark under the well-known marks doctrine. Id. at 479

In contrast, New York misappropriation law does not work the "same transfer of property rights" as acquisition of trademark ownership or equivalent Section 43(a) relief. As the New York Court of Appeals' decision in ITC established, in addition to providing compensation to a foreign party for unauthorized use of a "property" interest, New York's common law of unfair competition also compensates for the unauthorized use of "commercial advantage." 880 N.E.2d at 859 (describing "time honored misappropriation theory, which prohibits a defendant from using a plaintiff's property right or commercial advantage," including "the goodwill attached to a foreign name"). New York's common law of unfair competition by misappropriation does not provide the foreign party with the right to exclude others from using the mark, and does not, like a trademark, reserve a designation for the

foreign party's exclusive use. It is worth noting that these distinctions appear to have been sufficient for the Second Circuit Court of Appeals to consider the Regulations inapplicable to Cubatabaco's New York claim. Rather than extend the applicability of the CACRs to Plaintiff's misappropriation claim, the Court relied exclusively on the merits to affirm this Court's dismissal. Empresa Cubana, 399 F.3d at 485.

In construing and applying embargo regulations, "which involve foreign policy and national security, [courts] are particularly obliged to defer to the discretion of executive agencies interpreting their governing laws and regulations." Paradissiotis v. Rubin, 171 F.3d 983, 988 (5th Cir. 1999); see Havana Club Holding, S.A. v. Galleon S.A., 203 F.3d 116, 125 (2d Cir. 2000) ("[T]he interpretation of the provision given by the agency charged with enforcing the embargo is normally controlling."). In contrast to its position that the CACRs bar transfer of the COHIBA mark to Cubatabaco in any way other than registration, the United States has advised that the Regulations do permit Cubatabaco to protect the Cuban COHIBA's goodwill under the Lanham Act. U.S. Mem. in Ct. App., Nov. 12, 2004, at 11. The distinction recognized by

the United States is supported by the CACRs' definition of "property," 31 C.F.R. § 515.311, which includes "trademarks" but not goodwill. While the United States' position that "a finding of liability . . . that is not dependent upon Cubatabaco's prior acquisition of the COHIBA trademark . . . [is] not prohibited under the Cuban Assets Control Regulations," was directed at Plaintiff's Section 43(a) federal claim, this construction is wholly consistent with both the Court of Appeals' opinion and Cubatabaco's state law misappropriation claim. Id. at 13.

Although the Second Circuit ultimately rejected the United States' position as it related to Plaintiff's alternative Section 43(a) claim, the Court's justification for so doing does not apply to Cubatabaco's state law claim. The Court viewed Plaintiff's alternative § 43(a) claim as an attempt to use federal law to undermine the effect of the Regulations. In contrast, Plaintiff's state law claim does not find its source in the federal trademark statute. In ITC, the New York Court of Appeals actually distanced unfair competition by misappropriation from the famous marks doctrine under federal law and made explicit that its holding was based on principles of common law unfair competition, rather than trademark law. See ITC,

880 N.E.2d at 859. This distinction between Plaintiff's
claims rooted in federal trademark law and its claims
rooted in the common law doctrine of unfair competition is
further evidenced by the fact that the Court itself did not
apply its CACR analysis to affirm dismissal of those
claims.

Based on the interpretation of the CACR put forth
by the Government and the Court of Appeals' holding,
General Cigar's argument that the Regulations bar relief on
Cubatabaco's state law claim is not convincing. Since this
Court now has the benefit of the position of the United
States on the reach of the CACRs, it is required to defer
to the Executive on embargo matters and the Executive's
construction of the CACRs should prevail unless clearly
precluded by the Second Circuit's decision. See Havana
Club Holding, 203 F.3d at 125. Absent contrary indication
from the Court of Appeals, this Court is left with the fact
that the United States has advised that an injunction
against General Cigar's use of COHIBA does not per se
violate the CACRs, and that, consistent with the
Regulations, such an injunction can be grounded on a claim
that neither requires ownership of a trademark as a
predicate nor results in the acquisition of a trademark.

U.S. Mem. 10. Accordingly, Defendant's argument that the CACRs bar relief on this motion is rejected.

## b. General Cigar's Registration Does Not Bar Relief

In its opposition to the present motion, Defendant also argues that its federal trademark registration bars Cubatabaco from asserting its state law claim. Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), provides that registration is "prima facie" evidence of the registrant's right to use the mark in commerce, "but shall not preclude another person from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." Since Cubatabaco could assert misappropriation under state law even if General Cigar had not registered the COHIBA mark, federal law preserves Plaintiff's claim.

General Cigar has also contended that "a party claiming common-law rights in a mark" must show actual use in the United States. Def. Mem. 23. The cases cited by General Cigar, however, stand for the proposition that a party claiming superior trademark rights over another,

including a registrant, must show actual use prior to the other's use or registration. See, e.g., Emergency One, Inc. v. American Fire Eagle Engine Co., Inc., 332 F.3d 264 (4th Cir. 2003) ("Thus, the owner of common-law trademark rights in an unregistered mark is not entitled to injunctive relief in those localities where it has failed to establish actual use of the mark."). The Cubatabaco claim here, though, is based on common-law protection against misappropriation of its foreign mark's goodwill. At this stage in the litigation, Cubatabaco is not seeking "common-law trademark ownership rights" in the COHIBA mark, which would require Plaintiff to show actual use, but rather a common law remedy based on state unfair competition law. In ITC, the New York Court of Appeals held that plaintiff could be entitled to relief against use of its foreign mark if it could establish deliberate copying and secondary meaning, even though the plaintiff had no U.S. trademark rights. ITC, 880 N.E.2d at 859 (making no reference to trademark rights but describing rule that "for certain kinds of businesses . . . goodwill can, and does, cross state and national boundary lines"). Accordingly, General Cigar's registration does not bar relief in this case.

**Conclusion**

Based on the facts established during and after
trial, and in accordance with both the New York Court of
Appeals' opinion in ITC and the Second Circuit Court of
Appeals' decision in this case, both Cubatabaco's Rule
60(b)(6) motion and its motion for judgment on its New York
misappropriation claim are granted.

It is so ordered.

**New York, N.Y.**
**November  /ᴹ , 2008**

ROBERT W. SWEET
U.S.D.J.